## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA FOR THE USE
OF DULLES PLUMBING GROUP, INC.,
*et al*.,

        *Plaintiffs*,

    v.

SELECTIVE INSURANCE COMPANY OF
AMERICA,

        *Defendant / Third-Party
Plaintiff,*

    v.

MOSELEY CONSTRUCTION GROUP
INC., *et al*.,

        *Third-Party Defendant.*

Civil Action No. 19-1824 (RDM)

## <u>MEMORANDUM OPINION</u>

This straightforward commercial dispute raises a novel issue of federal jurisdiction.

Plaintiff Dulles Plumbing Group, Inc. ("Dulles") worked as a subcontractor on a construction

project in the District of Columbia.  Dulles did not receive full payment for that work.  To

recover the money owed, Dulles sued Selective Insurance Company of America ("Selective"),

which acted as a surety on the project, in the Superior Court for the District of Columbia.

Selective removed the case to this Court based on diversity of citizenship—Selective is

incorporated and has its principal place of business in New Jersey, while Dulles is incorporated

and has its principal place of business in Virginia.  Selective then filed a third-party complaint

against Moseley Construction Group, Inc. ("Moseley"), the general contractor that hired Dulles

to work on the project.  Like Dulles, Moseley is incorporated and has its principal place of business in Virginia; it was diverse, however, for purposes of Selective's third-party complaint. The parties eventually entered into a three-way settlement agreement that called for Moseley to pay Dulles $175,000, but Moseley initially failed to pay the agreed-upon sum.  After Dulles filed a motion to enforce the settlement agreement, however, Moseley paid the amount owed.  The only remaining dispute before the Court is Dulles's claim for attorneys' fees and interest against Moseley.  Because Dulles and Moseley are both based in Virginia, the Court would not have diversity jurisdiction over a state-law action between those two parties.  The question is whether the Court may nevertheless exercise supplemental jurisdiction to enforce the settlement agreement between Dulles and Moseley.  For the following reasons, the Court concludes that it may not.  Dulles's motion to enforce must therefore be **DENIED**.

## I.  BACKGROUND

This case arises from a public construction project in the District of Columbia.  Dkt. 1-1 at 4 (Compl. ¶ 4).  As a general contractor on the project, Moseley executed a payment bond with Selective, as surety, to "secure Moseley's payment obligations to its subcontractors" on the project.  *Id*. at 4 (Compl. ¶ 5).  Under that agreement, "Selective obligated itself to pay the amounts that Moseley owes to its subcontractors on the [p]roject if Moseley itself refuses or is unable to pay."  *Id*. at 5.  On October 5, 2017, Moseley hired Dulles as a subcontractor to perform certain work on the project.  *Id*. at 5 (Compl. ¶ 6).  Dulles completed its work on October 12, 2018.  *Id*. (Compl. ¶ 7).  After "Mosely failed and refused to pay Dulles" an alleged outstanding balance of $212,482, Dulles sued Selective in the Superior Court of the District of Columbia on June 7, 2019, asserting that Selective was "liable to Dulles for unpaid monies . . . in connection with the [p]roject."  *Id*. at 6 (Compl. ¶¶ 14–15).

On June 21, 2019, Selective removed the case to this Court, invoking diversity jurisdiction.  Dkt. 1 at 1–2 (citing 28 U.S.C. § 1441).  Dulles is a Virginia corporation; Selective is a New Jersey corporation.  *Id.* at. 2.  Selective filed its answer on July 8, 2019.  Dkt. 10.  A week later, Selective filed a third-party complaint against Moseley, as permitted by Federal Rule of Civil Procedure 14.  Dkt. 12 (3d Party Compl.).  On the basis of an indemnity agreement between Moseley and Selective, Selective alleged that, "in the event that [it was] found liable to the Plaintiffs for any of the claims asserted against it" in Dulles's complaint, then Moseley is "obligated to reimburse and indemnify Selective for that loss, and for all costs and expenses, including interest, attorneys' fees and consultant's fees, Selective incurs in connection with" the case.  *Id.* at 3–4 (3d Party Compl. ¶ 14).  Selective further alleged that its third-party claim fell within the Court's diversity jurisdiction, because it is a New Jersey corporation and Moseley is a Virginia corporation.  *Id.* at 2 (3d Party Compl. ¶ 5).

After the Court stayed the case so the parties could negotiate a settlement, Minute Order (July 26, 2019), the parties executed a written settlement agreement "intended to resolve all of the payment-related disputes" in the case on September 19, 2020, Dkt. 30 at 2.  As part of the agreement, Moseley promised to pay Dulles $175,000, within one business day of Dulles providing certain paperwork.  Dkt. 31-2 at 2.  The settlement also provided that if a party needed to bring legal action to enforce the agreement, then "the substantially prevailing Party shall be entitled to an award of reasonable attorneys' fees and costs."  *Id.* at 8.

Dulles alleges that it produced the required paperwork on Friday, September 20, 2019, making Moseley's $175,000 payment due on or before Monday, September 23, 2019.  Dkt. 31-5 at 3.  But according to Dulles, Moseley refused to pay unless Dulles tendered a letter warrantying its work on the project, a condition not included in the settlement agreement.  *Id.*  The Court held

a hearing on the alleged breach on November 7, 2019, at which Moseley admitted that payment was being conditioned on the warranty letter. Hrg. Tr. (Rough at 12–13). But Moseley asserted that another entity involved in the construction project, Fifth Street Partners, controlled the funds and was insisting on the letter. *Id.* Moseley also argued that the Court lacked jurisdiction to enforce the settlement. *Id.* at 7–10. Dulles responded that the Court had inherent authority to do so. *Id.* at 16.

Following the hearing, Dulles filed a motion to enforce the settlement agreement, seeking the principal owed of $175,000, attorneys' fees as provided in the settlement agreement, and "sanctions" against Moseley, presumably in the form of interest, as permitted by D.C. law. Dkt. 31 at 2; Dkt. 31-5 at 1. Moseley opposed the motion, arguing that the Court lacked diversity jurisdiction over claims by Dulles (a Virginia company) against Moseley (a Virginia company) based on the settlement agreement. Dkt. 32 at 11–13. Moseley also argued that it had not breached the settlement agreement. *Id.* at 18–21. Selective filed a brief as well, siding with Dulles on the jurisdictional question and requesting that the Court enforce the settlement against Moseley. Dkt. 33.

Months later, Dulles filed a notice alerting the Court that Moseley had paid the principal sum of $175,000, but that Moseley had "not paid [Dulles's] attorney's fees . . . or any interest on the settlement amount." Dkt. 35 at 2. Selective also filed a notice, explaining that because Dulles had "been paid in full for its work," Selective had "no further obligation to Dulles." Dkt. 36 at 2. Selective therefore requested that the Court dismiss Dulles's claims against Selective. *Id.* Selective further argued that any additional damages that Dulles might seek against Moseley have "no bearing on Selective." *Id.* In a follow-up notice, Dulles acknowledged that following Moseley's payment of the principal, "Selective has no further liability under its bond" and

Dulles's claims against Selective "may be dismissed with prejudice." Dkt. 37 at 2. Finally, Moseley filed a post-payment notice as well, arguing that its payment of the principal rendered moot any attempt by Selective to enforce the settlement agreement. Dkt. 38 at 3–5.

Briefing is now complete, and Dulles's motion to enforce is ripe for decision.

## II. LEGAL STANDARD

Federal courts are courts of limited subject-matter jurisdiction and "possess only that power authorized by [the] Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Given "the nature and limits of the judicial power of the United States," the Court must assess its jurisdiction "as a threshold matter" and may not decide the merits of a case without first addressing the issue of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swain*, 111 U.S. 379, 382 (1884)). The plaintiff bears the burden of establishing jurisdiction. *Kokkonen*, 511 U.S. at 377. It is axiomatic that "subject matter jurisdiction may not be waived" and that "no action of the parties can confer subject-matter jurisdiction upon a federal court." *NetworkIP, LLC v. F.C.C.*, 548 F.3d 116, 120 (D.C. Cir. 2008) (internal quotations and citations omitted).

The Court's diversity jurisdiction extends to "all civil actions where the matter in controversy exceeds the sum or value of $75,000" and the dispute is between "citizens of different States." 28 U.S.C. § 1332(a). Although Article III reaches further, 28 U.S.C. § 1332 requires complete diversity, which means that diversity jurisdiction extends to only those cases in which no plaintiff is a citizen of the same state as any defendant. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373–74 (1978). Diversity jurisdiction therefore "is lacking if there are any litigants from the same state on opposing sides." *Saadeh v. Farouki*, 107 F.3d 52, 55 (D.C. Cir. 1997) (internal quotation marks and citation omitted).

Although the Court must have a statutory basis for exercising jurisdiction, "it is well established—in certain classes of cases—that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing *Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).  The scope of supplemental jurisdiction is itself cabined by statute.  Federal courts have supplemental jurisdiction when additional claims are so related to the claims over which the Court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Claims over which the Court may properly exercise supplemental jurisdiction include those "that involve the joinder or intervention of additional parties." *Id*.  But when jurisdiction is premised solely on diversity of citizenship, the Court does not have supplemental jurisdiction over "claims by plaintiffs against persons made parties under Rule 14 . . . of the Federal Rules of Civil Procedure . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of" the diversity-jurisdiction statute, 28 U.S.C. § 1332.  *Id*. § 1367(b).

### III. ANALYSIS

Plainly, the initial suit by Dulles against Selective and the third-party claim by Selective against Moseley fall within the Court's diversity jurisdiction.  Equally clear is that the Court could not have exercised diversity jurisdiction over a freestanding lawsuit between Dulles and Moseley, both of which are Virginia corporations.  The question then is whether the Court may invoke its supplemental jurisdiction to enforce a settlement agreement, signed by all three parties, in favor of plaintiff Dulles against third-party defendant Moseley.  This is apparently an

issue of first impression in this Circuit.  For the following reasons, the Court concludes that it does not have subject-matter jurisdiction over Dulles's claim for attorneys' fees and interest.

The parties devote much of their briefing to the threshold issue of whether a federal court with jurisdiction over a lawsuit can ever retain jurisdiction to enforce a contract settlement in that case.  Dulles argues in support of its motion to enforce that "[i]t is well established that federal district courts have the authority to enforce settlement agreements entered into by litigants in cases pending before them."  Dkt. 31-5 at 4 (quoting *Samra v. Shaheen Bus. & Inv. Grp., Inc.*, 355 F. Supp. 2d 483, 493 (D.D.C. 2005)).  Moseley responds that "federal courts lack inherent or ancillary jurisdiction to enforce settlement agreements even if the subject of the settlement was a federal lawsuit," because "a motion to enforce a settlement agreement is a separate contract dispute requiring an independent basis for jurisdiction."  Dkt. 32 at 15–16 (citing *Kokkonen*, 511 U.S. at 378–79).  Dulles and Selective reply that courts lose jurisdiction to enforce settlement agreements only after dismissal; so long as the suit remains pending, courts have ancillary jurisdiction to enforce settlements.  Dkt. 33 at 2–3; Dkt. 34 at 2.

Dulles and Selective have the better of this argument.  Binding D.C. Circuit precedent holds that *Kokkonen* bars enforcement of a settlement agreement only after the Court has dismissed the underlying case.  *See T St. Dev. LLC v. Dereje & Dereje*, 586 F.3d 6, 9–10 (D.C. Cir. 2009) (noting that "nothing in *Kokkonen* precludes district courts from enforcing settlements that occur during litigation").  When "a party seeks to enforce a settlement while the underlying suit remains pending, then the district court has jurisdiction to enforce the related settlement." *Id*. at 11.  Here, the case remains pending, and the Court therefore retains jurisdiction over the settlement agreement.  The cases that *Moseley* cites dealing with jurisdiction to enforce settlement agreements after dismissal are inapposite.

But in both *Kokkonen* and *T Street* the settlement agreements at issue were between parties who at one time were adversaries in a case within a district court's jurisdiction. Those cases thus demonstrate that the Court would have jurisdiction to enforce the settlement agreement as it relates to claims between Dulles and Selective or between Selective and Moseley. That is because Dulles and Selective—and Selective and Moseley—were diverse parties for purposes of 28 U.S.C. § 1332. The question remains, however, whether the Court has jurisdiction to enforce the settlement agreement between Dulles and Moseley, even though the Court does not have, and never had, diversity jurisdiction over any case or controversy between those two parties.

Moseley raises two arguments for why the Court lacks jurisdiction over Dulles's motion to enforce the settlement agreement. First, Moseley argues that Dulles's claims under the settlement agreement do not arise from the same "transaction or occurrence" as Dulles's claims against Selective under the surety agreement. Dkt. 32 at 9–11; *see* Fed. R. Civ. P. 14(a)(3) ("The plaintiff may assert against the third-party defendant any claim *arising out of the transaction or occurrence* that is the subject matter of the plaintiff's claim against the third-party plaintiff.") (emphasis added). Second, and more substantially, Moseley argues that in diversity cases, claims by a plaintiff against a third-party defendant require an independent jurisdictional basis. Dkt. 32 at 11–14; *see* 28 U.S.C. § 1367(b).

Dulles counters that it is not bringing a new claim against Moseley at all, so no independent basis for jurisdiction is necessary. Dkt. 31-5 at 4 ("[Dulles] is not trying to plead a new claim against Moseley; it merely seeks to move the Court to action involving two parties properly joined to this action."). Along the same lines, Dulles argues that because Selective supported its effort to enforce the settlement agreement, the Court's jurisdiction over the third-

party complaint is sufficient to order payment from Moseley to Dulles.  Dkt. 34 at 1–2. Alternatively, Dulles contends that the Court may properly exercise ancillary jurisdiction to enforce the settlement agreement in light of the Court's authority to "'function successfully, that is, to manage its proceedings.'"  Dkt. 34 at 3–4 (quoting *T Street*, 586 F.3d at 10).

With respect to Moseley's first argument, the Court is persuaded that the parties' dispute over the settlement agreement arises from the same transaction as Dulles's complaint against Selective, as well as Selective's complaint against Moseley.  As the D.C. Circuit has recognized in the related context of compulsory counterclaims, "[t]ransaction is a word of flexible meaning" that "may comprehend a series of many occurrences."  *Columbia Plaza Corp. v. Sec. Nat'l Bank*, 525 F.2d 620, 625 (D.C. Cir. 1975) (quoting *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593, 610 (1926)).  Courts look for a "logical relationship" between the claims, construing transaction "generously to avoid the unnecessary expense inherent in multiplicious litigation."  *Id*.  Here, all the claims in the case arise from Dulles's unpaid work on the construction project.  Dulles's claim for payment against Selective, Selective's claim for indemnification against Moseley, and Dulles's efforts to enforce the settlement agreement against Moseley are logically and factually entwined and therefore constitute a single transaction for purposes of Rule 14 and 28 U.S.C. § 1367.

Dulles's contention that the Court already had all the jurisdiction it needed to enforce the settlement agreement might have worked for the payment of the principal amount of $175,000. The settlement agreement conditioned both the dismissal of Dulles's lawsuit against Selective and the mutual release of claims between Dulles and Selective on the settlement payment from Moseley to Dulles.  Dkt. 31-2 at 3–4.  Selective therefore had a strong interest in Moseley making that principal payment, and the Court's jurisdiction over Selective's third-party suit

9

against Moseley might well have been sufficient to enforce the payment of principal from Moseley to Dulles.  But Moseley paid Dulles the principal balance of $175,000 as of January 6, 2020.  Dkt. 38 at 3.  As a result, all that remains in dispute is Dulles's claim for attorneys' fees and interest, and all parties agree that Selective has no stake in that claim.  Dkt. 36 at 2; Dkt. 37 at 2; Dkt. 38 at 3–5.  The Court therefore cannot rely on its jurisdiction over Selective's third-party complaint against Moseley to award attorneys' fees or interest to Dulles.  That relief requires a separate jurisdictional basis.

That brings the Court to the parties' remaining arguments and the ultimate issue in this case—whether the Court has supplemental jurisdiction over Dulles's claim against Moseley under the settlement agreement.  The Supreme Court has held that federal courts sitting in diversity do not have ancillary jurisdiction to hear a claim by a plaintiff against a third-party defendant from the same state. *Owen Equip.*, 437 U.S. at 377.  In *Owen Equipment*, an Iowa citizen whose husband was fatally electrocuted when "a steel crane next to which he was walking came too close to a high-tension electric power line" filed a wrongful death action against a Nebraska electric utility. *Id.* at 367.  The utility filed a third-party complaint against the crane company. *Id.* at 367–68.  The plaintiff then amended her complaint to name the crane company as a defendant, and the district court granted summary judgment to the electric utility. *Id.* at 368.  The case thus went to trial between the plaintiff and the third-party defendant crane company. *Id.*  But although the crane company had identified itself as a Nebraska Corporation, evidence at trial revealed that its principal place of business was really in Iowa—the apparent confusion owing to the way in which the Missouri River does (and does not) mark the border between the two states. *Id.* at 368–69 & n.5.  The crane company then moved to dismiss for lack of diversity jurisdiction. *Id.* at 369.  Although the Supreme Court recognized that federal courts

10

may sometimes exercise ancillary jurisdiction to "resolve an entire, logically entwined lawsuit,"

it held that such ancillary jurisdiction could not be used to defeat the complete diversity

requirement of 28 U.S.C. § 1332.  *Id.* at 377.  If plaintiffs were permitted to invoke ancillary

jurisdiction to bring claims against non-diverse third-party defendants, "[c]omplete diversity

[would be] destroyed just as surely" as if the plaintiff had sued the non-diverse party in the first

instance.  *Id.* at 374.  The Court therefore concluded that "neither the convenience of litigants nor

considerations of judicial economy can suffice to justify extension of the doctrine of ancillary

jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case."

*Id.* at 377.

In enacting 28 U.S.C. § 1367, Congress sought to simplify and to expand federal courts'

supplemental jurisdiction (encompassing what courts had called both ancillary and pendant

jurisdiction) and, in so doing, overrode certain Supreme Court precedent constraining the scope

of supplemental jurisdiction.  *See Allapattah*, 545 U.S. at 557–58.  But rather than override *Owen*

*Equipment*, Congress codified its result: "In any civil action of which the district courts have

original jurisdiction founded solely on [diversity], the district courts shall not have supplemental

jurisdiction . . . over claims by plaintiffs against persons made parties under Rule 14 . . . ."  28

U.S.C. § 1367(b).  It is Rule 14 that permits third-party suits like the one between Selective and

Moseley in this case.

Few courts have had occasion to apply the rule of *Owen Equipment* and 28 U.S.C.

§ 1367(b) in the context of enforcing a settlement agreement, but the Eighth Circuit has decided

one case on point.  *See Alumax Mill Prods., Inc. v. Cong. Fin. Corp.*, 912 F.2d 996, 999, 1005

(8th Cir. 1990).  The case arose from the collapse of Northern Aluminum Co. ("Northern"), a

Minnesota aluminum fabrication company, which set off a complex web of federal litigation.  *Id.*

at 998–99.  In one lawsuit, Alumax, one of Northern's suppliers, sued Northern's financier, Congress Financial, and one of Northern's accounting firms, Hodroff.  *Id*. at 1000–01.  Hodroff then filed a third-party complaint against another accounting firm, McGladrey, and Alumax amended its complaint to name McGladrey as well, even though Alumax and McGladrey were both citizens of Illinois.  *Id*. at 1001–03.  Alumax then reached a settlement agreement with both accounting firms, Hodroff and McGladrey, and Congress Financial appealed to challenge the settlement.  *Id*. at 1001.

On appeal, the Eighth Circuit held that although the district court had jurisdiction over the portion of the settlement agreement between diverse parties Alumax and Hodroff, it did not have jurisdiction over the part of the settlement agreement between the non-diverse parties, Alumax and McGladrey.  *Id*. at 1004–05; *see also id*. at 1005 ("The fact that Alumax's nonfederal claims against McGladrey, the third-party defendant and a citizen of the same state as Alumax, arise out of the same common nucleus of operative facts as the claims for which there are independent bases for federal jurisdiction cannot justify the extension of ancillary jurisdiction over a nonfederal claim against an additional, non-diverse defendant.").  The Eighth Circuit thus remanded the case to the district court to dismiss the plaintiff's claims against the third-party defendant for lack of jurisdiction.  *Id*. at 1012.

Although the Eighth Circuit reached this decision before Congress enacted 28 U.S.C. § 1367, the court's reasoning is persuasive and applies equally today.  Following that logic, the Court holds that it lacks subject-matter jurisdiction to enforcement the settlement agreement between Dulles and Moseley.  Nothing in that agreement permits the Court to deviate from the clear rule that *Owen Equipment* and 28 U.S.C. § 1367(b) establish.  The Court is therefore

prohibited from exercising jurisdiction over a claim asserted by a plaintiff against a non-diverse third-party defendant in a diversity case.

In the face of this binding authority, Dulles's references to the general purposes of ancillary jurisdiction are unavailing.  The Supreme Court in *Owen Equipment* considered those same benefits of ancillary jurisdiction and still held that the district court lacked jurisdiction. *Owen Equip.*, 437 U.S. at 377.  Whatever the scope of the Court's power to "manage its proceedings, vindicate its authority, and effectuate its decrees," *see* Dkt. 34 at 3 (citing *Kokkonen*, 511 U.S. at 380), Congress and the Supreme Court have mandated that such power does not extend to ruling on Dulles's motion for attorneys' fees and interest under its settlement with Moseley.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Dulles's motion to enforce the settlement agreement as against Moseley; will **DISMISS** Dulles's complaint against Selective (which is the subject of the parties' settlement) with prejudice; and will **DISMISS** Selective's third-party complaint against Moseley (which Selective plans to pursue in a separate suit) without prejudice.  As explained above, no separate claims by Dulles against Moseley were ever presented to the Court, so there is no action between those parties to dismiss.  In any event, dismissals for lack of jurisdiction are generally without prejudice.  *See* Fed. R. Civ. P. 41(b).

This decision therefore should pose no obstacle to Dulles's bringing an action against Moseley in Superior Court, should Dulles choose to do so.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Dated:  October 7, 2020